# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 22, 2015

## GINGER ILENE HUDSON STUMP v. STATE OF TENNESSEE

### Appeal from the Circuit Court for Bedford County
### No. 17800     Franklin Lee Russell, Judge

---

### No. M2014-01373-CCA-R3-CD – Filed April 29, 2015

---

The petitioner, Ginger Ilene Hudson Stump, pled guilty to seven counts of forgery, of which six were Class E felonies and one was a Class D felony. The trial court sentenced her as a career offender to twenty-four years in the Department of Correction. On direct appeal, this court affirmed the petitioner's convictions and sentence. State v. Ginger Ilene Hudson Stump, No. M2012-02723-CCA-R3-CD, 2013 WL 5310526, at *1 (Tenn. Crim. App. Sept. 20, 2013). Subsequently, she filed a *pro se* petition for post-conviction relief, alleging she received the ineffective assistance of counsel. Counsel was appointed and, following an evidentiary hearing, the post-conviction court denied the petition. Based upon our review, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Brian C. Belden, Shelbyville, Tennessee, for the Defendant-Appellant, Ginger Ilene Hudson Stump.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Robert James Carter, District Attorney General; and Richard A. Cawley, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## FACTS

The petitioner was indicted for twenty-six counts of forgery, pled guilty to seven of the counts as stated above, and the remaining nineteen counts were dismissed as part of the plea agreement.

On direct appeal, this court set out the facts resulting in the petitioner's convictions, as summarized by the State at the guilty plea hearing:

Sometime last year, it was believed that Mr. Stephen Stump and/or [the petitioner] went into a Play It Again Sports in Florida where they sold some items to Play It Again Sports and were given a check for those items by Play It Again Sports. They then took that check and altered the checks to say . . . S & J Hauling, I believe it was, or a J & J Hauling is what they made it, but . . . they left the tracking number as the same.

So, they simply changed, altered the business'[s] name, but left the tracking numbers the same. So, then they [came] to Tennessee, and we would show, then, Your Honor, that on February the 23rd of 2012, [the petitioner] took one of these altered checks into, on that particular day, Kroger and wrote a check, and filled that check out, put her name on it, and passed it at Kroger for the value of $496.14.

The State would then show that on March the 8th of 2012 -- okay, the check number on this one is 1534, [the petitioner] went into United Grocery Outlet and passed one of those checks, the altered checks, to the amount of $265. Then on March the 12th, check number 1565 was given to Kincaid's Furniture here in Shelbyville for $960.20. . . .

. . . .

Then Count 13, the State would say that on March the 13th, for check number 1566, [the petitioner] took one of the altered checks and passed it at Bedford Urgent Care in the amount of a hundred and fifty dollars. Count 17, on March the 14th, check number 1555, one of the altered checks, was passed at Roses for $299.79. And then on Count 19, on March the 15th, check number 1660, check was, one of the altered checks, was passed at Wal-Mart for $265.76. And then on March the 24th, check number 1639 was passed, one of the altered checks, was passed at First Automotive for $5,873.94.

I will say that all those locations, while I didn't specifically go through them, are all located here in the city of Shelbyville, Your Honor. And that after the interview, the police went to Mr. Stump's and [the petitioner's] residence over in Moore County, and most of . . . the stuff, like the cars and the furniture that was purchased at Kincaid's, was located at their home and actually returned to the businesses.

2

Id.

At the April 17, 2014 evidentiary hearing, trial counsel testified that he had been practicing law for twenty-five years and had been employed with the public defender's office for sixteen years. He said that the State made an offer in writing of eighteen years at 60%, and he sent a letter to the petitioner informing her of the offer, which she rejected. The petitioner's letter to counsel dated September 22, 2012, which was admitted as an exhibit, stated:

> I've been sitting here patiently waiting for you to come and see me so we could figure something out. Well I must tell you I've received a letter from you saying 18 yrs--60%. Well that ain't gonna work. I'm not agreeing to that. Court is only 15 days away. We must talk because there is no way I'm agreeing to a sentence like this. So far I'm feeling that you['re] not working to the best of my interest. Please proof [sic] me wrong by this. . . . [I]f an offer doesn't come to me a whole lot less th[a]n the letter you sent, I will go to trial. Please come see me.

Counsel said that the petitioner's "bone of contention" was that her sentence should not be greater than her husband's even though her prior criminal history was "terrible" and her husband was a Range I offender. When the petitioner learned that her husband had agreed to testify against her, she became more willing to plead guilty.

Trial counsel said that, according to the petitioner's presentence report, there were more than enough felonies on her record to classify her as a career offender and that he explained that to her before she entered her guilty plea. Counsel said that he reviewed the guilty plea petition with the petitioner and that she understood the terms of the agreement. He said that at no time during the guilty plea hearing did the petitioner say she thought she had an eighteen-year agreement.

The petitioner testified that trial counsel sent her a letter informing her of the State's offer of eighteen years at 60%, which she initially rejected. Asked why she rejected the offer, the petitioner said:

> I thought it was a little steep. . . . I mean, . . . here's me and my husband, . . . we did the same charges, you know. I mean, he's a convicted felon[]. I mean, yes, . . . I do know that my record is . . . worse tha[n] his, but I just, here he is with ten and I'm . . . fixing to get all these years. . . . I just didn't think it was right.
>
> You know, and it was just property crimes – look, I've never . . . said I was innocent because I'm not. I am guilty, you know, and . . . I've

3

got to pay for what I've done, but I just feel, I feel that I need a fair sentence, and I just feel that it's too steep.

She later told counsel in the courtroom that she wanted to take the State's offer, but counsel said, "That was my mistake. . . . They didn't offer that, it was my mistake."

The petitioner said that, prior to the plea submission hearing, she asked the trial court for a new attorney because she "didn't feel that [trial counsel] was at the best of [her] interest." The trial court denied her request, saying that "[trial counsel] was one of the best with the Public Defender's Office." Because the court denied her request, she did not bring up her dissatisfaction with trial counsel at the plea hearing.

On cross-examination, the petitioner said that she was unsure if she had written more forged checks than her husband but acknowledged writing at least thirteen checks. She agreed that she could have received a sentence of eighty-four years if convicted as charged. She acknowledged that she read the plea agreement before she signed it and that there was no mention of an eighteen-year sentence in the agreement.

At the conclusion of the hearing, the post-conviction court orally dismissed the petition and subsequently entered a written order and memorandum opinion setting out its findings. This appeal followed.

## ANALYSIS

The petitioner argues that she received the ineffective assistance of trial counsel because she "could not accept the offer proposed by the State because [she] believed from [trial counsel] the offer of eighteen years at sixty percent was no longer or ever available."

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

4

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687(1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

In dismissing the petition, the post-conviction court concluded:

> The [p]etitioner's chief complaint seems to be that she was offered eighteen (18) years at sixty (60%) percent, which she admits she initially rejected, but that she ultimately decided to accept the offer. The

[p]etitioner alleges that at that point, when she told [trial counsel] that she would accept the offer, [trial counsel] advised her that he had misunderstood what the offer was and that in fact there was no such offer.

[Trial counsel] testified that the State made such an offer, that he communicated the offer to the [petitioner] on more than one occasion, and that she declined the offer both orally and in writing. In a handwritten letter from [the petitioner] to [trial counsel] and to co-counsel, dated August 12, 2012, and admitted as Exhibit 2 to the evidentiary hearing, the [petitioner] wrote, "I'm not taking the first offer so I feel ya'll need to bring something our way. Plus we go to Rutherford County on August 28 we all wanting it run with this." Then in a handwritten letter from [the petitioner] to [trial counsel] dated September 22, 2012, and admitted as Exhibit 3 at the evidentiary hearing, the [petitioner] wrote, "Well I must tell you, I've received a letter from you saying 18 yr. – 60% well that ain't gonna work. I'm not agreeing to that. Court is only 15 days away . . . there is no way I'm agreeing to a sentence like this . . . . [I]f an offer doesn't come to me a whole lot less than the letter you sent, I will go to trial."

[Trial counsel] testified credibly that this was in fact the State's offer and that when he passed along the [petitioner's] rejection of the offer, the assistant district attorney refused to lower their offer. Therefore the case was set for a jury trial. Subsequently the State and the [petitioner] negotiated the deal for the [petitioner] to plead open to seven counts, to have the remaining counts dismissed, and for the State to commit not to pursue charges related to other checks seized by law enforcement.

At the sentencing hearing, it was agreed by the parties that the [petitioner] was a career offender. No evidence has ever [sic] produced to rebut that assertion. The sentence previously summarized was imposed, but that sentence was appealed to the Court of Criminal Appeals. The Court of Criminal Appeals affirmed the sentence. It is noted that while the [p]etitioner complains mightily that she received a more harsh sentence than her husband/co-defendant, the reason for the disparity was that the [p]etitioner here was a career offender and that the husband had only one felony conviction on his record.

This judge concludes that the relevant facts are that the State made a fairly generous offer to the [petitioner], she declined to accept it, the State would not reduce their offer, and the [petitioner] received a longer sentence at the sentencing hearing. [Trial counsel] never recanted the offer. The sentence the [petitioner] received was lawful and was affirmed, and there is no doubt that the [p]etitioner has regrets about not accepting the offer.

There is, however, no credible evidence that defense counsel's performance fell below the applicable standard for a criminal attorney.

We conclude that the record supports the post-conviction court's finding that trial counsel provided effective representation. Trial counsel testified that he conveyed the State's offer of eighteen years at 60% in writing to the petitioner, but she rejected it. The petitioner acknowledged receiving counsel's letter outlining the offer, which she initially rejected. Trial counsel testified that he never told the petitioner that the offer was a mistake, and the post-conviction court found that counsel had testified "credibly." The petitioner admitted that she read the plea agreement before signing it and that there was no mention of an eighteen-year offer in the agreement.

In sum, the petitioner has failed to show that trial counsel was deficient in his representation. We conclude, therefore, that the petitioner is not entitled to post-conviction relief on the basis of her claim of ineffective assistance of counsel.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
ALAN E. GLENN, JUDGE

7